IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LORI L. SUTPHIN,

        Plaintiff,

v.                                                  Civil Action No. 5:13-cv-161

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## **REPORT AND RECOMMENDATION**

**A. Background**

On November 25, 2013, Lori L. Sutphin filed this action under 42 U.S.C. §1383(c) for judicial review of an adverse decision of the Commissioner of Social Security denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act. 42 U.S.C. §§1381-1383f.[1] The Commissioner filed her Answer on April 21, 2014.[2] Ms. Sutphin then filed her Motion for Summary Judgement on May 29, 2014,[3] and the Commissioner filed her Motion for Summary Judgment on June 30, 2014.[4] Ms. Sutphin filed a Response in Opposition on July 14, 2014, 2014.[5] The motions are now ripe for this Court's review, and for this report and recommendation.

**B. The Pleadings**

---

[1] Doc. No. 1.

[2] Doc. No. 18.

[3] Doc. No. 24.

[4] Doc. No. 25.

[5] Doc. No. 27.

1. Plaintiff's Motion for Summary Judgement and Memorandum in Support.

2. Commissioner's Motion for Summary Judgment and Memorandum in Support.

**C. Recommendation**

I recommend both motions for summary judgment be **DENIED** and the case be remanded solely for the ALJ to address the effect of claimant's diagnosed bipolar disorder which was not addressed in the original decision.

## II. FACTS

**A. Procedural History**

On November 8, 2010, Ms. Sutphin applied for Social Security Income ("SSI") alleging various physical and mental conditions that limit her ability to work. These conditions include: bipolar disorder, carpal tunnel, a right partial knee replacement, bulging discs, a cyst on the liver, kidney stones, high blood pressure, heart problems, short-term memory loss, vision problems, and hearing problems. R. 216. On February 14, 2011, Ms. Sutphin's claim was denied. R. 130. Plaintiff submitted a request for reconsideration, and on May 23, 2011, the Social Security Administration found the previous determination denying Plaintiff's claim was proper. R. 138.

On June 5, 2012, a hearing was held before ALJ Regina Carpenter in Morgantown, West Virginia. R. 41. ALJ Carpenter denied Plaintiff's application on June 22, 2012, finding Plaintiff "not disabled" at any time since November 8, 2010. R. 21. On August 27, 2013, the Appeals Council denied review. R. 5. Subsequently, Plaintiff brought this claim.

**B. Personal History**

Plaintiff was born on January 26, 1969. R. 49. At the time of the ALJ hearing, Plaintiff was forty-three years old, had two children, and was divorced. R. 50. Plaintiff dropped out of

high school after the eleventh grade and has not obtained a GED. R. 51.

**C. Medical History**

1. Physical Health History

On February 4, 2010, Plaintiff was diagnosed with a chondromalacia patella, suspected medial meniscus tear, and chronic knee pain. R. 324. That same month, a MRI was performed. R. 333. The reading physician found "[n]o significant internal knee derangement" and "[n]o evidence for a medial meniscal tear." *Id.* The reading physician further noted that there appeared "[a] small signal abnormality of the medial femoral condyole" that may be a "subchondral cystic change" or "a small osteochondral defect." *Id.* On June 22, 2010, Plaintiff underwent a partial knee replacement. R. 304. Three months later, during a post-surgery observation, Plaintiff offered that she was "virtually pain-free and getting along well but still experienc[ing] swelling . . . ." R. 316. On October 14, 2010, a MRI of the lumbar spine revealed "some degenerative change [at] L4-5 and minimal disc bulge as well." R. 349.

On October 21, 2010, Plaintiff was hospitalized complaining of chest pain and sharp pain "radiating down her left arm." R. 354. The admitting physician found that Plaintiff likely had "atelectasis in both lung bases" and a "probable cyst in the liver." R. 354. During the relevant period, Plaintiff was a smoker. R. 302.

On January 17, 2011, Plaintiff was treated for law back pain and some "occasional numbness and tingling" in her legs. R. 541. Upon a physical examination, Dr. Vincent Miele, M.D., found Plaintiff had "5/5 motor strength in all major muscle groups," symmetrical deep tendon reflexes, and "[s]traight leg raising . . . at 90 degrees with negative internal and external rotation of the femur." R. 542-43.

A bone scan conducted on March 9, 2011 displayed "unremarkable results." R. 538. After the bone scan, Jennifer Lantz, PA-C, remarked that Plaintiff "has axial mechanical cervical spine with radicular symptoms into the bilateral upper extremities" and "worsening" bilateral paresthesias. R. 538. A cervical spine MRI performed on May 13, 2011 showed "some degenerative changes" but "[n]o evidence of nerve root impingement." R. 535.

On May 21, 2011, Dr. Narendra Parikshak, M.D., conducted a "Physical Residual Functional Capacity Assessment" ("Physical RFC"). R. 498. Dr. Parikshak reported the following exertional limitations: Plaintiff can (1) occasionally lift and/or carry up to twenty pounds; (2) frequently lift and/or carry up to ten pounds; (3) stand and/or walk for a total of about six hours in an eight-hour workday; (4) sit for a total of about six hours in an eight-hour workday; and (5) experience no push and/or pull limitations. R. 499. The RFC found several postural limitations. Plaintiff can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. R. 500. However, Plaintiff can never climb ladders, ropes, or scaffolds, or crawl. R. 500. According to the RFC, Plaintiff has no manipulative,[6] visual, or communicative limitations. R. 500-01. According to the Physical RFC, Plaintiff must also avoid concentrated exposure to extreme cold, vibration, fumes, odors, dusts, gases, poor ventilation, and other hazards (such as machinery and heights). R. 502.

On June 22, 2011, an examination of Plaintiff by Dr. Victorico Singzon, M.D., revealed a "negative straight-leg raise and para-spinal tenderness of the cervical and lumbar area" with Plaintiff's knees displaying "good" range of motion. R. 528. On December 6, 2011, during another examination with Dr. Singzon, Plaintiff reported a new injury resulting in back pain. R.

---

[6] "Manipulative Limitations" refers to actions such as reaching, handling, fingering, and feeling. R. 501.

559. Dr. Singzon found Plaintiff had a bulging lumbar disc without myelopathy. R. 560. Plaintiff refused Dr. Signzon's recommendation for "conservative therapy." *Id.* On February 12, 2012, Dr. Singzon conducted a checkup and reported that Plaintiff complained of arm pain, but elected not to have injections "while she [was] doing very well on pain medication." R. 640.

2. Mental Health History

On November 30, 2009, Plaintiff was diagnosed with bipolar disorder. R. 476. Included in the record is a "Routine Abstract Form Mental" from the West Virginia Disability Determination Section. *Id.* The form indicates that Plaintiff was initially treated at Bridgeport Behavioral Clinic for bipolar depression on November 30, 2009. Plaintiff's last visit to the clinic was December 30, 2010. R. 457, 460. From an evaluation conducted on December 30, 2010, Plaintiff was recorded as depressed, with "mildly deficient judgement," "mildly deficient" insight, and psychomotor activity "within normal limits." R. 458. Further, Plaintiff was reported as being: "mildly deficient" with immediate memory and social functioning; "moderately deficient" with recent memory, task persistence, and pace; and "severely deficient" in concentration. R. 459.

On January 7, 2011, a "Mental Residual Functional Capacity Assessment" ("Mental RFC") was preformed by Jeff Boggess, Ph.D. R. 481. The RFC concluded that Plaintiff was "moderately limited" in the ability to: understand and remember detailed instructions; carry out detailed instructions; and maintain attention and concentration for extended periods. R. 477. In all other cognitive categories, Plaintiff was not significantly limited.[7] R. 477-78. Dr. Boggess also concluded Plaintiff had "Bipolar syndrome with a history of episodic periods manifested by

---

[7] The Mental RFC categories include: understanding and memory; sustained concentration and persistence; social interaction; and adaptation. R. 477-78.

the full symptomatic picture of both manic and depressive syndromes . . . ." R. 484. Nevertheless, Dr. Boggess noted that Plaintiff "retains the ability for routine 1-2 step work activity." R. 479. On May 20, 2011, Dr. Holly Cloonan, Ph.D., affirmed Dr. Boggess's conclusions. R. 497.

Another January 2011 examination noted that Plaintiff's "intergrative functions of orientation to time, person, [memory], attention span and concentration, language and fund of knowledge were all normal." R. 543. On November 28, 2011, Dr. Singzon reported Plaintiff exhibited "normal affect and mood" and had "stopped taking her [psychological medications] except for he [sic] xanax." R. 567.

**D. Testimonial Evidence**

Testimony was taken at the June 5, 2012 ALJ hearing. The following portions of the testimony are relevant to the disposition of the case:

Plaintiff testified that she is divorced and lives in an apartment with her fiancé. R. 50, 62. She testified that she has difficulty driving due to her vision, but drives every day. R. 50-51. Because of her vision, she has difficulty reading. R. 51. She has difficult counting change. R. 52. She testified that she receives some income from babysitting. R. 53. For nearly seven months, she was babysitting five days a week for three to four hours a day. R. 53-54. She babysits less because the child she babysat for now attends daycare. R. 54. Prior to babysitting, she was a cashier at a local restaurant. R. 55. Plaintiff testified that she quit working as a cashier due do to back and leg pain. R. 55-56. Plaintiff testified that she was a cook in 2010 and served as a caretaker for an elderly individual. R. 58. In 2009, Plaintiff worked as a cook for Compton Lanes. *Id.* Plaintiff performed various cleaning jobs in 2007 and 2008. R. 61.

Plaintiff testified that on an average day, she'll wake up around 6:30 a.m. R. 63. She generally naps every day. R. 64. She testified that she cooks for her fiancé and takes clothes to a laundromat. R. 67-68. Plaintiff obtained a driver's license when she was sixteen years old. R. 73.

Plaintiff testified that she has an "aching constant" pain in her right knee. R. 69. She testified that she can stand for an hour before sitting and can walk up to a mile and a half. *Id.* Plaintiff experiences regular crying spells. R. 70. She testified that she has a bulging disc in her lower back resulting in "excruciating" pain. R. 72.

Vocational Expert ("VE"), Dr. Larry Ostrosky, Ph.D., also testified at the hearing. R. 74. The ALJ posed the following hypothetical to Dr. Ostrosky:

> If we assume an individual of the same age, education and work background as the claimant who's capable of performing sedentary work as defined in the regulations with the following limitations. The person requires a sit/stand option which would allow a change of position for one to two minutes every [sixty] minutes. There should be no crouching, no crawling, no kneeling, no climbing of ladders, ropes or scaffolds, no more than occasional balancing, stooping or climbing of stairs or ramps. There should be no exposure to extreme heat and cold, vibration or hazards such as unprotected heights or dangerous moving machinery. The person is limited to simply, routine and repetitive instructions and tasks that do not require any reading above the seventh grade level, writing above the fifth grade level or math more than simple addition or subtraction. The work should be performed in a low stress environment which I'll define as requiring no production line type of pace or independent decision making responsibilities. Should be no interaction with the general public, no more than occasional interaction with coworkers or supervisors. Would such a person be able to perform any of the claimant's past work?

R. 75-76. The VE testified that no such person would be able to perform Plaintiff's prior work. R. 76. The VE also testified that there are occupations that such an individual, as posed in the hypothetical, could perform. R. 76. Within the ALJ's hypothetical, the VE presented three

7

positions: (1) document preparer, a sedentary and unskilled job with a SVP of 2 (DOT: 249.587-018); (2) table worker, a sedentary and unskilled job with a SVP of 2 (DOT 739.687-182); and (3) ampoule sealer, a sedentary and unskilled job with a SVP of 2 (DOT: 559.687-014). *Id.* According to studies cited by the VE, an individual could be off task up to ten percent of the time and still "maintain the required levels of productivity required . . . by employers." R. 77. The VE testified that employers will tolerate two incidents of tardiness per month before experiencing any consequences. *Id.*

### III. THE MOTIONS FOR SUMMARY JUDGEMENT

**A. Contentions of the Parties**

Plaintiff makes four general contentions for her motion for summary judgement: (1) The ALJ's Step 2 analysis is incomplete and is not supported by substantial evidence; (2) the ALJ's RFC determination is unsupported by substantial evidence; (3) the ALJ's credibility determination is unsupported by substantial evidence because the ALJ erred in assessing the required factors in determining Plaintiff's credibility; and (4) the ALJ's determination that Plaintiff is capable of performing jobs that exist in significant numbers within the national economy is not supported by substantial evidence. The crux of these contentions, primarily in arguments one and two, was the ALJ failed to recognize and properly analyze Plaintiff's bipolar diagnosis and use of a prescription cane. Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff could perform the limited range of sedentary work identified by the vocational expert.

**B. The Standards**

<u>1. Summary Judgment</u>

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

3. Social Security - Claimant's Credibility

"Because he had the opportunity to observe the demeanor and to determine the credibility of the Claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). "We will reverse an ALJ's credibility determination only if the Claimant can show it was 'patently wrong'" *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (quoting *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)).

**C. Discussion**

1. ALJ's Step Two Analysis

Plaintiff contends that the ALJ's Step Two analysis is incomplete and not supported by substantial evidence. Plaintiff argues that the ALJ failed to analyze Plaintiff's diagnosed bipolar disorder and use of a prescription cane. Plaintiff reasons that because the ALJ did not mention Plaintiff's diagnosed bipolar disorder or use of a cane in her Step Two analysis, her analysis is incomplete and her findings are unfit for review.

After a Step One determination that a claimant is not engaging in a substantial gainful activity, an ALJ will proceed to Step Two to determine whether a claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R.§ 416.920(c) (2014); 20 C.F.R. § 404.1521(c) (2014). Impairments "cannot meet the criteria of a listing based only on a diagnosis." 20 C.F.R. § 404.1525(d) (2014).

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir.1986). "The ALJ is required to explain his findings at each step of the evaluation process so that the reviewing court can make determinations on whether [her]

10

decision is supported by substantial evidence." *Fraley v. Astrue*, 2009 WL 577261, *24 (N.D.W. Va. Mar. 5, 2009). The Fourth Circuit in *Cook* held that the "ALJ must fully analyze whether a Claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Id.* "In *Cook*, the ALJ made an unreasoned determination that the claimant's arthritis did not meet or equal a listed impairment without having evidence in the record that was pertinent to the criteria of the listed impairment." *Hlatky v. Astrue*, 2011 WL 6936179, *2 (W.D.N.C. Dec. 30, 2011); *Cook*, 783 F.2d at 1173. Nevertheless, *Cook* "does not establish an inflexible rule requiring an exhaustive point-by-point discussion in all cases." *Russell v. Chater*, 1995 WL 417576, *3 (4th Cir. 1995). In *Russell*, the Fourth Circuit held that because the claimant was not contesting the *substance* of the ALJ's analysis, it was "questionable at best" that the ALJ needed to provide all listed impairments available in the record. *See id.*

In this case, Plaintiff is contesting the substance of the ALJ's analysis. Plaintiff argues that three separate incidents of Plaintiff appearing in a stable mood during medical evaluations does not provide substantial evidence that Plaintiff's diagnosed bipolar disorder should be discounted. In Step Two of the ALJ's analysis, there is no reference to Plaintiff's diagnosed bipolar disorder even though "there is factual support a listing could be met." *Fraley*, 2009 WL 577261, *24. Plaintiff was diagnosed with bipolar disorder in 2009. R. 476. Furthermore, in Plaintiff's 2011 Mental RFC, Dr. Boggess found Plaintiff has "Bipolar disorder with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes . . . ." R. 484. In Step Two, the ALJ found Plaintiff had depression and anxiety; however, she concluded that panic attacks and short term memory loss were not adequately established by clinical or other objective medical findings. Here, the ALJ's references to

depression, anxiety, and panic attacks as impairments could relate to Plaintiff's bipolar diagnosis. Indeed, the ALJ's finding may be proper. Yet, because no reference is made to the bipolar diagnosis in the ALJ's written opinion "it is simply impossible to tell whether there was substantial evidence to support the determination." *Cook*, 783 F.2d at 1173. Therefore, the undersigned recommends that this case be remanded for a complete identification and explanation of Plaintiff's bipolar disorder.[8]

2. ALJ's RFC Determination

    *a. Weighing the Opinion of the State Agency Psychological Expert*

    Under this claim, Plaintiff argues that the ALJ did not adequately consider Plaintiff's impairments in assessing her RFC, failed to properly weigh the opinion of the state agency psychological expert, and erred in failing to afford controlling weight to Plaintiff's treating physician.

    In determining how much weight an ALJ may give to a medical opinion, the following factors are considered: (1) examining relationship; (2) treatment relationship, including the length, frequency, nature, and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; (6) and other factors that "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c) (2014).

    Here, the ALJ gave "significant weight . . . to the supportive assessments completed in January and May 2011 by the State Agency's psychological consultants . . . ." In providing "significant weight" to these assessments and by "accord[ing] some benefit of the doubt in the

---

[8] Plaintiff also briefly argues that Plaintiff's use of a cane to support her right knee was not considered. From the record, it is clear that the ALJ considered the "degenerative arthritis/osteochondral defect of the right knee" and Plaintiff's right knee replacement in Step Two of her analysis.

claimant's favor," the ALJ found Plaintiff to have "moderate" limitations with regard to social functioning. It is clear this conclusion is based from Dr. Boggess's January 2011 Mental RFC. Yet, the record indicates that on the same day, January 7, 2011, Dr. Boggess's also completed a separate "psychiatric review" which concluded Plaintiff had a mood disturbance evidenced by "Bipolar disorder with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes." R. 484. This conclusion does not appear in the ALJ's decision. Because the ALJ provided "significant weight" for Dr. Boggess's January 2011 findings, but only cited one section of the finding, "it is simply impossible to tell whether there was substantial evidence to support the determination." *Cook*, 783 F.2d at 1173.

  *b. Offering Plaintiff's Treating Physician "Controlling Weight"*

  In this claim, Plaintiff argues the ALJ failed to properly evaluate the medical opinion of Plaintiff's treating physician because the ALJ gave the physician's opinion "little weight." Instead, Plaintiff contends, the ALJ should have afforded Plaintiff's treating physician "controlling weight."

  A treating source medical opinion must be given controlling weight when all of the following are present: (1) the opinion comes from a treating source; (2) the opinion is about the nature and severity of the claimant's impairments; (3) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (4) the opinion is not inconsistent with other substantial evidence in the case record. SSR 96-2p; 20 C.F.R. §416.927(d)(2) (2014). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); *see also Mastro v. Apfel*, 270 F.3d 171, 178

(4th Cir. 2001) ("Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.").

However, a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. SSR 96-2p. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R 404.1527 and 416.927. The ALJ must give good reasons for the weight given to a treating source's opinion. 20 C.F.R. § 416.927(c)(2). Specifically, the decision:

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p. After Plaintiff's December 30, 2010 medical examination, the attending physician concluded that Plaintiff exhibited a "severely deficient" cognitive ability to concentrate. R. 459.[9] Plaintiff contends this opinion should have been granted "controlling weight" by the ALJ. However, the ALJ provided satisfactory reasons as to why she accorded "little weight" for the medical opinion of Plaintiff's "purported 'Physician/Psychologist.'" If the medical opinion is inconsistent with other substantial evidence in the record, that opinion cannot be offered "controlling weight." 20 C.F.R. §416.927(d)(2). In this case, the ALJ cited several

---

[9] From the record, there is no evidence as to who diagnosed Plaintiff or determined that Plaintiff had "severely deficient" concentration ability. R. 457-60. On the line provided for the "signature of Physician/Psychologist," the line is marked by only what could be generously interpreted as the letter "J." R. 460. The only evidence available to the court is that Plaintiff was treated at the Bridgeport Behavioral Clinic in Nutter Fort, WV. Therefore, the attending physician will be referred to as the "Bridgeport physician."

inconsistences between the medical opinion of Plaintiff's Bridgeport physician and the evidence in the record. For example, contrary to the medical opinion of the Bridgeport physician, the ALJ cited multiple instances from the record within twelve months of the Bridgeport physician's examination where Plaintiff reported no disabling mental illness or psychiatric symptoms, let alone "severely deficient" functional capacities. Thus, under this claim, it is clear the ALJ used substantial evidence to not offer "controlling weight" to the Bridgeport physician.

3. ALJ's Credibility Determination

Plaintiff contends the ALJ's credibility determination is unsupported by substantial evidence. The Fourth Circuit stated the standard for evaluating a claimant's subjective statements of pain and other symptoms in *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). Under *Craig*, the determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment reasonably likely to cause the symptoms alleged. *Id.* at 594. "It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. In making this evaluation, the ALJ must consider not only the claimant's subjective statements about his symptoms, but also the claimant's medical history, other objective evidence of pain, and "any other evidence relevant to the severity of the impairment." *Id*. While the ALJ may not reject a claimant's subjective statements solely because they are not substantiated by the available objective evidence, she need not credit them to the extent they are inconsistent with the objective medical evidence. *Id*.

The regulations set forth certain factors for the adjudicator to consider to determine the extent to which the symptoms limit the claimant's capacity to work:

> 1) The individual's daily activities; 2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) Factors that precipitate and aggravate the symptoms; 4) Type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. 404.1529(c) and 416.929(c) (2014). Accompanying factors that the adjudicator must also consider when assessing the credibility of an individual's statements are provided in SSR 96-7p. These factors include medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by medical sources; and statements and reports about claimant's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the claimant's symptoms and how the symptoms affect the individual's ability to work. SSR 96-7p.

The record illustrates that the ALJ evaluated Claimant's symptoms in accordance with the two-part test in *Craig* and the factors outlined in 20 C.F.R. 404.1529 and SSR 96-7p. In step one of the *Craig* test, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the symptoms that the claimant has alleged throughout the period at issue." Next, in accordance with the factors set out in 20 C.F.R. 404.1529 and SSR 96-7p, the ALJ considered whether Plaintiff's subjective statements regarding her symptoms were substantiated by, or conflicted with, the objective evidence in the record, and

found that "claimant's statements concerning the intensity, duration and limiting effects of such symptoms are not entirely credible." R. 25.

First, the ALJ found that during 2008-09, and while Plaintiff's fifth disability benefit application remained pending, plaintiff worked and received $10,249. *Id*. The ALJ noted that figure exceeds the total amount she received over the preceding twelve years. *Id.* From this evidence, the ALJ concluded that Plaintiff's "functionality has not progressively decreased and that she has filed repeatedly for disability benefits despite a demonstrated ability to obtain and perform gainful employment." *Id.*

Next, the ALJ cited Plaintiff's employment as a caretaker for an elderly gentleman, a babysitter for one child, and cook at the Compton Lanes snack bar as evidence that contradicted "the presence of any intractable and disabling mental illness(es)." R. 26. The ALJ found that Plaintiff's recent "work activities further tend to indicate her retention of at least such functionality as would enable her to perform and sustain at least such a limited range of 'sedentary' exertional work activity as has been defined within the parameters above." *Id.*

Additionally, the ALJ contended that this claim offered "little objective medical evidence of any significant changes in [Plaintiff's] condition" that would warrant a departure from Plaintiff's previous six unsuccessful disability applications. *Id.* The ALJ cites other examples of factual inconsistences in the record. She notes that Plaintiff indicates limitations in reading, writing, and arithmetic, yet "has obtained numerous jobs as a cashier in the past." *Id.* In April 2011, Plaintiff claimed she was "unable to work" while refusing to change medication or partake in individual therapy, against professional medical advice. *Id.* In January 2012, Plaintiff refused back injections recommended by her doctor. *Id.* In February 2012, she claimed she was "doing

17

very well" on pain medication. *Id.* The ALJ cites this medical history "serves to diminish the claimant's underlying credibility with regard to her allegations as to the severity of and limitations associated with her impairments and related symptoms. *Id.*

Based on this thorough and detailed review of the evidence, this Court finds that the ALJ correctly followed the *Craig* test in evaluating Mr. Smith's subjective symptoms. Additionally, the Court finds that more than substantial evidence exists to support the ALJ's decision to discredit Claimant's subjective complaints.

4. ALJ's Determination that Plaintiff is Capable of Performing Job within the National Economy

In this final claim, Plaintiff contends the ALJ's determination that Plaintiff is capable of performing jobs in the national economy is not supported by substantial evidence and the ALJ's Step Five determination is unsupported by substantial evidence because the ALJ asked an incomplete hypothetical. The crux of this claim by Plaintiff is that Plaintiff's bipolar disorder was not appropriately considered.

"The purpose of presenting a hypothetical to a VE is to elicit information that will enable the ALJ to determine whether work is available in the national economy which the plaintiff can perform." *Farnsworth v. Astrue*, 604 F. Supp. 2d 828, 837 (N.D.W. Va. 2009) (citing *Walker v. Bowen*, 889 F.2d 47, 48 (4th Cir. 1989)). A VE is used to show "that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy." *Walker*, 889 F.2d at 50. Furthermore, the vocational expert's testimony must be based on a consideration of the entire record and "must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments." *Id.* at 51. Based on Plaintiff's diagnosed bipolar diagnosis, discussed supra, the ALJ's Step Five analysis

is incomplete.

## IV. RECOMMENDATION

I recommend both motions for summary judgment be **DENIED** and the case be remanded solely for the ALJ to address the effect of claimant's diagnosed bipolar disorder which was not addressed in the original decision.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

DATED: September 15, 2014                    /s/ *James E. Seibert*
                                             JAMES E. SEIBERT
                                             UNITED STATES MAGISTRATE JUDGE